In the Matter of the Estate of SAMUEL H. WOLFMAN, Deceased.

Surrogate's Court, Kings County, June 19, 1930.

*Hutter & Rosenbloom,* for the executor and executrix.

*Ralph Copland,* for Ruth Bergmann, widow and petitioner.

*Gardiner Conroy,* special guardian, for Mildred Wolfman and Norman Wolfman, infants.

WINGATE, S. The questions here presented arise upon a petition for the modification of a decree on a final accounting of executors, entered in this court on the 25th day of July, 1929.

The will, governing the distribution, was admitted to probate on December 10, 1925. After giving two general legacies, it created a trust of $50,000, the income from which was payable to testator's wife for life with remainders over, and directed that the residue be divided into two equal parts, one of which was given in trust for each of testator's two children. According to the figures in the final decree, the principal funds of these residuary trusts amounted to $84,006.44 each. In other words, the principal funds of these three trusts for the wife and two children of the decedent aggregated $218,012.88, on the figures submitted by the accountants.

The income of the estate during the years of the administration was as follows: First year, $753.88; second, $881.47; third, $19,854.39, and, fourth, to accounting, $8,100.15. The payments to the widow during these periods were: First year, $3,000; second, $3,000; third, $3,050, and fourth, $500; and to the children, first year, $9,500; second, $8,250; third, $9,953, and fourth, $1,689.50.

As will be seen from the foregoing, the total receipts of income up to the date of the accounting amounted to $29,589.89, while the payments to the widow totaled $9,550, and to the children, $29,392.50, an aggregate of $38,942.50, or an overpayment of $9,352.61.

On the accounting, this deficit was handled by treating $3,800 of the sum turned over to the widow as a payment, and the balance of $5,750 as a loan. This still left a deficit of income payments of $3,602.61, which was charged to principal. It was stated in the report of the special guardian at the time of the entry of the decree that the trustees were withholding parts of the income beneficially accruing to the infants to reimburse the principal as depleted by these overpayments, but no allegations to this effect were incorporated in the petition, account or decree.

The law respecting the rights of beneficiaries to income pending the settlement of an estate is well settled.

As was stated in *Cooke* v. *Meeker* (36 N. Y. 15 at p. 22): " * * * when a sum is left in trust, with a direction that the interest and income should be applied to the use of a person, such person is entitled to the interest thereof from the date of testator's death."

Again, in *Matter of Stanfield* (135 N. Y. 292) the court says (at p. 294): " Where the income of an estate, or of a designated portion, is given to a legatee for life, we think it is clear that he becomes entitled to it whenever it accrues, and if the estate is productive of income from the death of the testator, he can require the executor to account to him for the income from that time. The rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary, or of administration (*Matter of McGowan*, 124 N. Y. 526), has no application in such a case. It is, by its terms, limited to general legacies payable out of the corpus of the decedent's estate. In the present case the bequest is not of a part of the principal of the estate, or of any property possessed by the testator in his lifetime; but of that which is to arise or accrue after his death from a specified fund to be set apart for that purpose. It is the income which constitutes the respondent's legacy. He is not seeking to charge the estate with interest upon his legacy, but is simply endeavoring to secure the legacy itself and his effort, therefore, involves no infringement of the rule regulating the payment of interest upon general legacies."

The following appears at page 297: " If the estate is sufficient for the liquidation of debts and other charges, and is so invested as to be productive of income from the death of the testator, a bequest of income to a legatee for life must be construed to invest him with a title to such income from the date of the testator's demise, unless there is some provision in the will from which a contrary intent is to be inferred. . The statutory time of payment of the income to the legatee is not affected by this construction. He must still wait, as the respondent did, until the expiration of one year from the grant of letters before payment of the income can be demanded, but he is then entitled to his share of the net income which has previously accrued."

The rules of law thus enunciated have received uniform adherence. (*Pittman* v. *Johnson*, 35 Hun, 38; affd., 102 N. Y. 742; *Powers* v. *Powers*, 49 Hun, 219; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; affd., 184 N. Y. 576; *Matter of Harden*, 177 App. Div. 831; affd., 221 N. Y. 643; *Matter of Carey*, 200 App. Div. 344; app. dism., 235 N. Y. 504.)

It follows that the widow and children were entitled to the income earned by the estate on their respective trust funds from the date of testator's death, but as no power to invade principal was given in this connection, they were entitled to nothing beyond such income, which, as noted, amounted to $29,589.89. They were, however, paid $9,352.61 in addition, which was consequently an unauthorized payment and a *pro tanto* invasion of principal.

The amounts of the earned income which the widow and the children respectively were entitled to receive were those proportions of the total earned income of $29,589.89 which the principal funds of their respective trusts bore to the aggregate principal of all three trusts.

As noted, $5,750 of the overpayments were charged to the widow as a loan, but the excess of $3,602.61, paid out of principal, was not considered in computing the total residue going into the trusts for the two children. In determining the true principal of these trusts, therefore, this sum must be added to the aggregate principal as shown by the account. When this is accomplished, it is found that the true residue of the estate amounted to $171,615.49, making the corpus of each trust for the children $85,807.74½ instead of $84,006.44, as stated in the decree.

Adding the $50,000 trust for the wife to the sum of the trusts for the children gives a total of $221,615.49 as the total of the three trusts. The percentage of the earned income which the widow was entitled to receive was, therefore, 50,000-221,615.49ths of $29,589.89. This amounts to 22 and 56/100 per cent, or $6,675.48.

Since the widow actually received $9,550, it is apparent that she was overpaid to the extent of $2,874.52 and not to the extent of $5,750 as set forth in the account. It follows that the widow was liable to repay the former and not the latter sum to the estate.

By a parity of reasoning, the income to which the infants were entitled amounted to $22,914.41. They received $29,392.50. The difference of $6,478.09 must, therefore, be repaid to the estate from income accruing on their trusts subsequent to the date of the decree.

Enter amended decree, on notice, accordingly.