In the Matter of the Estate of ADELHEID G. MEYER, Deceased.

Surrogate's Court, Kings County, April 16, 1931.

*Edgar R. Mead,* for the executors.

*Petersen, Steiner & Kohan,* for the respondent.

WINGATE, S.   The Court of Appeals has said: " Equity will not feed the husband and starve the wife " (*Wetmore* v. *Wetmore,* 149 N. Y. 520, 529), yet that is precisely the effect which some of the applicable controlling decisions may produce on the wife concerned in the proceeding at bar.

John H. W. Meyer is a duly adjudicated incompetent veteran who, according to the allegations herein, has been confined for more than six years in the United States Veterans Hospital at Northport with negligible chances for recovery.   His wife is in difficult, if not destitute, circumstances and herein applies for payment over to her, as the duly qualified committee of the incompetent, of the accumulated income of a trust erected for the benefit of the incompetent by the will of his mother and for a construction thereof.

By the terms of this will, which was admitted to probate in this court on July 17, 1929, one-fourth of the estate is bequeathed to Henry C. Meyer, a brother of the incompetent, in trust to invest, " and to use such part or the whole of the income therefrom for such expenditures as the said Trustee shall, in his discretion, deem advisable, to insure so far as possible the comfort " of the incom-

petent. This direction then continues to the effect that if the lunatic shall regain his sanity, the entire fund then in the hands of the trustee shall be paid over to him, but if he " shall die without having been judicially declared competent, said trust fund and all accumulations remaining thereon " shall be divided between the trustee and one of his sisters individually, a third part going into a contingent trust for a second sister.

According to the figures contained in the account of the executors the net estate totals in excess of $104,000, which would give a corpus for the trust of the incompetent of approximately $26,000, on which an annual income of $1,300 should be readily attainable. Although more than twenty-two months have elapsed since the death of the testatrix, it is alleged, and not denied, that not a cent of income has been paid by the trustee to or for the incompetent, and his wife, the legally appointed committee, alleges on information and belief " that it is the intention of the executors and trustees not to use or pay any part of said income for the incompetent, but to accumulate such income during his lifetime and to pay over such accumulated income " to themselves and to or for the sister. Some color is given to this allegation by the extremely earnest contention of these fiduciaries that it is beyond the power of this court to determine at this time that these accumulations are the vested property of the incompetent.

It is unquestionable that a discretion is vested in the trustee by the terms of the will as to the time when the income of this trust shall be used for the benefit of the incompetent. If this discretion is being honestly exercised for the presumed welfare of the brother, and not as a mere cloak for an attempt by the trustee to divert the fund to his own benefit and that of his sisters, it is rather unfortunate that his attitude before the court has exposed him to the imputation of an attempt to do a gross injustice to his sister-in-law, the natural dependent of this helpless brother, for the purpose of lining his own pocket at her expense. She is the legally recognized conservator of the incompetent's estate, and if the money were paid over to her a portion might be employed under the strict supervision of the Supreme Court in relieving her needs and fulfilling the legal obligations to her, resting upon the incompetent. (*Matter of Flagler*, 248 N. Y. 415; *Matter of Farmers L. & T. Co.*, 181 App. Div. 642; affd., 225 N. Y. 666; *Matter of Warren*, 207 App. Div. 793.)

These are the human and moral aspects of the situation, which, however, must give way to established rules of law when the two conflict. It is, therefore, incumbent on the court to determine whether the testamentary directions are legally valid or whether, as

contended on behalf of the wife, they constitute a violation of the laws of this State.

Section 61 of the Real Property Law (as amd. by Laws of 1915, chap. 670) and section 16 of the Personal Property Law (as amd. by Laws of 1928, chap. 172) prohibit accumulations of income except for a minor during the continuance of his non-age (*Pray* v. *Hegeman*, 92 N. Y. 508, 515, 516, 517, 519; *Barbour* v. *De Forest*, 95 id. 13, 16), and the testamentary directions in the case at bar are attacked on this ground. The question is, therefore, squarely presented as to whether the terms of the will are in violation of the statute or not.

The problem is by no means novel, having frequently received the attention of the courts. One of the early cases on the subject is *Craig* v. *Craig* (3 Barb. Ch. 76), in which the testator erected a trust for his adult lunatic son, directing the trustee to expend so much of the income in his behalf as might be necessary, and providing that on his death the principal and any accumulations of income should be paid to others.

The court (at p. 92) held such an implied direction for accumulation void, as being for adults or persons not in being, pointing out, however, that if there were a valid gift of the entire income to the lunatic, it would be upheld and that (at p. 93): " A mere temporary surplus for a single year, owing to some peculiar circumstances, which may be all expended, in addition to the whole annuity, the succeeding year, would not be deemed an accumulation within the meaning of the statute."

It is apparent, therefore, that an essential prerequisite to the decision of the question presently propounded is a determination of whether this will directs an accumulation of income or not. If it does, the trust is, at least *pro tanto*, void. (*Matter of Hoyt*, 116 App. Div. 217, 221; affd., 189 N. Y. 511; *Matter of Keogh*, 112 App. Div. 414, 418; affd., 186 N. Y. 544.) If no accumulation is directed, it can only be because that income is presently validly given to some definitely ascertained individual.

That it is so given to the lunatic is now settled beyond question by a long line of authoritative determinations.

According to modern decision, the provisions of section 63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) become a guiding principle of distribution only when there is no direction for payment of income contained in the will. (*Matter of Hoyt*, 116 App. Div. 217, 221, 222; affd., 189 N. Y. 511; *Matter of Megrue*, 170 App. Div. 653, 657; affd., 217 N. Y. 623; *Matter of Kohler*, 231 id. 353, 375.)

In the case at bar, as in many of the other cases raising similar

questions, there are two directions, the *first* to apply the income for the benefit of the incompetent and the *second* to pay over any accumulations of income to others. The second direction, with its implication of authority to accumulate in violation of the statute, is, as noted, void. A direction to apply income is, however, the equivalent of its direct gift. (*Gasquet* v. *Pollock,* 1 App. Div. 512, 513, 514; affd., 158 N. Y. 734; *Matter of Smith,* 12 N. Y. Supp. 415; reported by memorandum only, 59 Hun, 616; affd., 126 N. Y. 641.)

In conformity with the modern doctrine to save such valid portions of a will as may be disassociated from the invalid, it has uniformly been held that the void direction for accumulation will be deleted and the valid direct gift of the entire income to the life tenant sustained.

In *Matter of Hoyt* (116 App. Div. 217; affd., 189 N. Y. 511) the court said (at p. 221): "The rule seems to be well settled that where the direction for an accumulation is void, and there is some other and legal disposition of the rents and profits, the statute does not apply; that in such case the direction for accumulation should be eliminated from the will.

"The direction to accumulate in this will can be stricken out and there then still remains a valid disposition of the rents and profits. The testator gave the fund to the trustees to collect the income from each and every part of it. He clothed his trustees with power to apply *the entire income to the use of his daughter.* He also clothed them with power, in their discretion, if they did not think she needed all of the income, to accumulate it, and if they did so, he gave it to the remaindermen. The authority, as we have seen, to accumulate is void but the authority to pay the entire income to the daughter is nevertheless valid and enforcible. If this be true, then the daughter was entitled to the entire income and whatever had accrued at the time she died passed to her representatives. This conclusion, it seems to me, necessarily follows from the rule laid in *Pray* v. *Hegeman* (92 N. Y. 508) and *Barbour* v. *DeForest* (95 id. 13)."

To like effect see *Matter of Keogh* (112 App. Div. 414, 418; affd., 186 N. Y. 544); *Crawford* v. *Dexter* (178 App. Div. 764, 772, 773, 778; affd., 224 N. Y. 586); *Bloodgood* v. *Lewis* (209 id. 95, 102); *Curtis* v. *Curtis* (185 App. Div. 391).

The question then arises respecting the present possessory rights of the life tenant through his committee to this accumulated income. The status of the trustee in this regard is that he is, by the terms of the will, constituted a custodian and conservator of the unexpended balance which may remain in his hands from time to time. (*Bloodgood* v. *Lewis,* 209 N. Y. 95, 104; *Crawford* v.

*Dexter,* 178 App. Div. 764, 778; affd., 224 N. Y. 586; *Curtis* v. *Curtis,* 184 App. Div. 274, 278; *Matter of Bavier, No. 1,* 164 id. 358, 361.) This may be retained by him in the exercise of a sound and honestly exercised discretion to provide for future needs of the life tenant. (*Curtis* v. *Curtis,* 184 App. Div. 274, 278; *Hill* v. *Guaranty Trust Co.,* 163 id. 374, 378; *Matter of Scharmann,* 63 Misc. 640.) As is said by Surrogate Ketcham in the last cited case (at p. 641): " The trust is not to apply the income of each year to the support of the beneficiaries during that year. Its provision is that the income shall be devoted to the maintenance and use of the incompetents during their natural lives. It is thus intended that income accrued in the past and not expended shall be held for disbursement in the future, upon any emergency which may arise to involve an expenditure greater than that which has heretofore been found sufficient in each year."

It follows that as a result of the terms of the will at bar, construed as required by decisions binding upon this court, no direction can here be made compelling the trustee to pay over any part of the income of this trust to the committee of the incompetent on the showing now made. To this court the result appears unfortunate. It is possible that the wife may be able to secure some relief in her present unfortunate situation by reason of the provisions of section 98 of the Real Property Law (*Wetmore* v. *Wetmore,* 149 N. Y. 520; *Brearley School, Ltd.,* v. *Ward,* 201 id. 358; *Matter of Flint,* 118 Misc. 354), but as this question must be determined in another tribunal, this court naturally expresses no opinion on the subject.

The objection of the trustee that the title to the presently accruing income of the trust should not now be determined, is overruled. The question is properly and necessarily in issue, and its decision, in addition to being fundamentally prerequisite to the result reached, is within the discretion of the court. (*Curtis* v. *Curtis,* 185 App. Div. 391, 397, 398.)

The court, therefore, determines that the trust created by the 3d item of decedent's will is valid; that the entire income therefrom since testatrix's death is vested in John H. W. Meyer; that the trustee, in the honest exercise of a sound discretion, is entitled to retain, as custodian, such portions of the income as he does not deem presently necessary for the use of the life tenant; that in the event that John H. W. Meyer shall be judicially declared competent, all income and principal then in the hands of the trustee shall be paid over to him; but in the event that he shall die without having been judicially declared competent, all accumulated income is payable to his estate and the corpus of the trust is payable to the

alternate remaindermen who possess contingently vested rights therein. In the interval it is the duty of the trustee, as conservator of the unapplied income, to see that it is profitably employed.

In one respect the theory of the accountants in their account is apparently incorrect, and must be remedied in the distribution to be directed by the decree. They have made payments of identical sums to the four named beneficiaries. Whereas their interests, absolute or in trust, are equal, the absolute legatees are entitled to interest only from one year from the date of letters (*Brown* v. *Knapp*, 79 N. Y. 136, 141; *Thorn* v. *Garner*, 113 id. 198, 202; *Matter of Kings County Trust Co.*, 141 App. Div. 43, 46; *Matter of Berbling*, 134 Misc. 730, 731), but the gift in trust for John H. W. Meyer, being one for maintenance, bears interest from the date of the death of testatrix. (*Cooke* v. *Meeker*, 36 N. Y. 15, 22; *Matter of Stanfield*, 135 id. 292, 294; *Matter of Wolfman*, 137 Misc. 325, 328, and cases cited.) The decree herein will, therefore, direct that from the distributable sum in the hands of the executors there shall first be paid to the trustee for John H. W. Meyer a sum as income on his trust, and thereupon the remaining avails of the estate will be divided equally. (See the extremely lucid enunciation of the applicable principle by Surrogate FOLEY in *Matter of Lord*, 134 Misc. 198; affd., 228 App. Div. 771.) The income allowable will be at the rate earned by the estate. If the parties are unable to agree on this point, the matter may be brought on for hearing on five days' notice.

In view of the fact that the executors, although they received their letters in July, 1929, took no action to have their account judicially settled until after the filing of the compulsory petition herein by the committee of the incompetent, in January, 1931, costs will be awarded her, payable from the estate as a whole, and she may make application for an allowance under section 278 of the Surrogate's Court Act.

Proceed accordingly.